421 So.2d 834 (1982)
STATE of Louisiana
v.
Gerald PARKER.
No. 81-KA-1103.
Supreme Court of Louisiana.
October 18, 1982.
Rehearing Denied November 19, 1982.
*836 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Sheila Myers, Asst. Dist. Attys., for plaintiff-appellee.
Numa Bertel, Dwight Doskey, Orleans Indigent Defender Program, John L. Carroll, Stephen J. Ellmann, Montgomery, Belhia V. Martin, New Orleans, for defendant-appellant.
CALOGERO, Justice.[*]
Gerald Parker appeals his conviction on two counts of second degree murder and his concurrent sentences of life imprisonment, without eligibility for parole, probation, or suspension of sentence for a period of forty years. He was indicted by an Orleans Parish Grand Jury on November 18, 1976, on two counts of first degree murder in connection with an armed robbery of the New Orleans Popeye's Fried Chicken, Inc., outlet No. 21. At his first trial by jury, Gerald Parker was found guilty of first degree murder and sentenced to death. On appeal this Court reversed that verdict because the jury which tried the case had not been sequestered as required by law. State v. Parker, 372 So.2d 1037 (La.1979). The jury at the defendant's second trial was unable to reach a verdict. Parker appeals the conviction and sentence rendered at the conclusion of his third trial on the basis of six assignments of error,[1] only the first three of which will be treated in the body of this opinion. The others involve no significant points of law, and are governed by clearly applicable legal principles. They are discussed in an appendix attached to this opinion which remains a public record of this Court but which will not be published in the Southern Reporter.
Upon review, we find that none of these assignments of error have merit, and affirm the defendant's conviction and sentence accordingly.
The facts which gave rise to Parker's indictment were as follow. Popeye's Fried Chicken, Inc., outlet No. 21, was robbed sometime between 7:55 and 8:05 A.M. the morning of October 1, 1976. Two employees, Leathea Woodward and Joseph Morgan, were forced to kneel on the floor of a large walk-in cooler, whereupon both were shot in the head and killed. Approximately six hundred dollars and a metal safe drawer were missing from the store, none of which were recovered. Some cash was found scattered on the floor around the safe and another metal safe drawer was still in the safe itself. Additionally three spent .38 caliber pellets were retrieved, one from each of the victim's bodies and a third from the cooler wall.
Seventeen days later, a Winn Dixie Supermarket in Donaldsonville, Louisiana was robbed by three black males, in the course of which the employees were made to kneel in a walk-in cooler while the perpetrators escaped. Once alerted, the police chased a car with three black males speeding south through Raceland. The car crashed in a roadside ditch but the men had left the scene before the pursuing officers were able to confront them. Both the defendant and his cousin Frazier Parker were arrested separately shortly thereafter in the vicinity of the accident. The officers found in the car a .38 caliber pistol, and later determined *837 that the car belonged to the defendant Gerald Parker.
Subsequent police investigation showed that the .38 revolver found in the defendant's car on October 18, 1976 in Raceland, Louisiana was the same .38 revolver used in the October 1, 1976 robbery/murder at Popeye's in New Orleans. Investigation also determined that the defendant's right thumbprint matched one on the metal drawer found in the safe at Popeye's No. 21. Furthermore a search with a warrant, of Frazier Parker's New Orleans apartment, uncovered coin rollers and bank deposit slips bearing the account number of the Popeye's franchise.[2]
Following this Court's reversal of the first guilty verdict, the defendant Gerald Parker asserted an alibi defense in his second and third trials, the latter of which forms the basis for his first assignment of error in this appeal.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, defendant contends that the trial court erred in allowing the state to present evidence to rebut defendant's alibi defense in violation of (1) the discovery notice provisions, (2) the hearsay rule, and (3) the trial court's sequestration order. He argues that the state's presentation of this rebuttal evidence should have been grounds for a mistrial.
Before the second trial, the defense filed an Answer to the State's Demand for Notice of Alibi which said in pertinent part:
The defendant, during the relevant time period was either at or en route to the following locations within the Parish of Orleans: 1015 Valence Street; Wah's Cleaners, 4539 Freret Street; Cadiz Street Grocery, 2836 Cadiz; Golden Day Nursery, 4322 S. Derbigny St. The defendant intends to rely on the following witnesses to establish his alibi: Rosi[e] Scott [Parker], James Griffin, Joe Wah, Cameria Collins, Bruce Larkin [Addresses of witnesses omitted].
Apparently the state gave no notice of any witnesses it planned to call to rebut defendant's alibi witnesses in the second trial; nor did the state call any. That trial ended with a hung jury.
During a June 3, 1980, hearing before the third trial with which we are here concerned, the defense counsel informed the trial court and the state that its notice of alibi remained the same and requested that it be made part of the record for that purpose. After the defense presented its case, which included testimony of Gerald Parker and Rosie Scott Parker, defendant's common law wife, the state called in rebuttal Officers Hahn, Falcon and Woodall, and one James Bowles, the former employer of Rosie Scott Parker.
The testimony of Hahn, Falcon and Woodall disputed Parker's explanation of how his thumbprint came to be on the metal safe drawer. Bowles' testimony contradicted the earlier testimony of both Rosie and Gerald Parker that the defendant had dropped her off at work around 8:00 A.M. on the morning of October 1, 1976. [As noted, the Popeye's murders occurred between 7:55 and 8:05 A.M.] James Bowles, the manager of the Bun and Biscuit Restaurant, 308 St. Charles Avenue, testified and brought with him a time card allegedly completed by Rosie Scott Parker which indicated that she had signed in for work on the morning of October 1, 1976 at 9:00 A.M. At the close of Bowles' testimony and out of the presence of the jury, defense counsel moved for a mistrial arguing that the state had violated the discovery provisions by neglecting to notify them of witnesses it would call to rebut Parker's alibi defense. The trial judge denied the motion on the ground that the Bun and Biscuit had not been listed as one of the locations on which the defense would rely to establish Parker's alibi. Instead the trial judge determined that the reference to the Bun and Biscuit *838 was contemporaneously added during defense testimony and therefore was subject to rebuttal by the prosecution. The trial judge, however, granted a recess so that the defense could examine Bowles' records and interview Bowles himself outside the presence of the jury regarding the manner in which the records were compiled.[3] The trial judge also offered to allow defense questioning of Rosie Parker outside the presence of the jury, but the offer was refused.
La.C.Cr.P. art 727 states that upon written demand, a defendant must notify the state of his intention to assert an alibi defense. The article requires that the defendant specify his location(s) at the time of the alleged offense and those witnesses on whom he will rely to establish this defense. Reciprocally the discovery article requires the state to tender in writing to the defense, the names of those witnesses who will place the defendant at the scene of the offense and which will rebut the testimony of the defendant's alibi witnesses. The initial burden of notification is on the defense if so requested by the district attorney, which then gives rise to a reciprocal burden on the state.[4]
Rosie Scott Parker was listed as an alibi witness in the defendant's answer to the state's demand for notice of alibi. Admittedly Bowles' testimony was presented in rebuttal to Rosie's testimony (and that of the defendant) concerning the time of her arrival at work on October 1, 1976. However, the question becomes whether this testimony was part of Gerald Parker's stated alibi defense. We find, as did the trial judge, that it was not.
The perimeters of that alibi defense were drawn initially by the defendant Gerald Parker in his answer to the state's demand for alibi notice. Those witnesses that need to be revealed in turn by the state in response to the defendant Parker's notice of alibi are those on which the prosecution will rely to rebut the alibi witnesses' testimony regarding the defendant Parker's presence at any of the specified locations. Bowles' testimony did not rebut Rosie Scott Parker's testimony concerning the presence of the defendant at 1015 Valence Street; nor at Wah's Cleaners, 4539 Freret Street; nor at Cadiz Street Grocery, 2836 Cadiz; nor at Golden Day Nursery, 4322 S. Derbigny.
The defendant argues that the phrase "either at or en route to" four designated locations (other than his wife's place of employment) incorporates his dropping his wife off at her place of employment as part of his alibi defense even though no mention of the Bun and Biscuit, (300 block of St. Charles Avenue) was made in his answer to the state. The discovery article requires specificity. "En route to" is too vague and ill defined to satisfy the specificity requirements of La.C.Cr.P. art. 727. Furthermore, for a journey encompassing each of the four recited locations, the Bun and Biscuit is about thirty blocks out of the way.
The defense argues further that the state was aware of Rosie Scott Parker's testimony concerning Parker's driving her to work the morning of the incident since she and Parker had so testified at the earlier trial. Therefore, any witness called by the state to rebut similar testimony given at the later trial would be subject to the same notice requirements as those called to rebut defendant's presence at any of the locations specified in the written notice. There are several flaws in such an argument. In the *839 first place, this places discovery on a subjective rather than an objective basis. The state's reciprocal responsibility would be triggered not by the defendant's written answer as is specifically set forth in La.C. Cr.P. art. 727, but by the state's perception of what defense testimony is likely to be. Secondly, to allow testimony at former trials to be used to augment defendant's alibi defense without official notification to the state is to render meaningless the specificity requirement of La.C.Cr.P. art. 727 in all cases where the defendant is afforded a later trial. There is no indication in the language or history of La.C.Cr.P. art. 727, nor its federal counterpart, Rule 12.1, to indicate that the specific notice requirement should apply only to a defendant's first trial. Finally, there is no guarantee that the testimony of a witness at one trial will be the same as that of the same witness at a subsequent trial. Indeed on another matter [the time she and Gerald Parker awoke on October 1, 1976], Rosie Scott Parker expressly denied a statement she had made earlier, even when faced with a copy of her prior testimony. Relative to this point, defense counsel himself asked the defendant during the third trial: "In a previous hearing in this case, you were asked to give a recitation of your whereabouts that particular day. Did you go into as much detail as you have gone into today?" to which Gerald Parker responded, "No sir. I did not."
The purpose of the discovery articles is to eliminate unwarranted prejudice which could arise from surprise testimony. State v. Toomer, 395 So.2d 1320 (La.1981). No unwarranted prejudice resulted from Bowles' testimony. Even were we to decide (which we do not) that the state was under an obligation to inform the defense of its intention to call Bowles as a witness, La.C. Cr.P. art. 729.5 leaves the remedy for violations of the discovery provisions to the discretion of the trial judge. La.C.Cr.P. art. 727(D), and its counterpart, Fed.Rule Cr. Proc. 12.1(d), allows but does not require the exclusion of the testimony of any undisclosed witness offered by a party as to the defendant's absence from or presence at, the scene of the alleged offense.[5]
Concerning the state rebuttal to defendant's alibi defense in violation of the hearsay rule, the complaint is to the admission of Rosie Parker's time card for the day in question, October 1, 1976. It reflected her arrival at the Bun and Biscuit at 9:00 A.M., a full hour after the time of the alleged offense. The defense contends that the time card is hearsay evidence whose admission is not justified under the principles approved by this Court in State v. Perniciaro, 374 So.2d 1244 (La.1979) concerning the business record exception.[6] This complaint may or may not have merit. The question, however, is essentially irrelevant to our consideration because the defense made no objection to the testimony of James Bowles, nor did the defense counsel object when the state offered the time cards into evidence. It was only at the conclusion of the direct *840 examination of James Bowles at a time when the jury was not present in the courtroom that the defense asserted any objection. The information from the time card had already been given to the jury in James Bowles' oral testimony without objection. The admission of the records themselves, therefore, did not prejudice defendant's rights. State v. Foote, 379 So.2d 1058 (La. 1980).
Finally the defendant's complaint that Bowles' testimony should have been excluded by the trial judge because the sequestration order was violated is without merit. Not every violation of the sequestration order must result in the exclusion of the witness' testimony. State v. Lewis, 367 So.2d 1155 (La.1979). The purpose of sequestration is to assure that a witness will testify as to his own knowledge. Absent any evidence that the testimony was tainted by the violation of the sequestration order, the trial judge may properly rule that the testimony should not be precluded. State v. Edsall, 385 So.2d 207 (La.1980). Bowles testified that he heard the prosecutor cross-examining the defendant but heard none of the defendant's testimony on direct examination. He further testified that he heard approximately fifteen minutes of questioning concerning the time defendant arrived at the Bun and Biscuit but had not known the reason the cards were important in the trial until he arrived at court. There is no evidence that Bowles' testimony was tainted by the sequestration violation. He testified only to the time cards in his possession, not regarding his personal knowledge of the case. Such a violation of the sequestration rule does not require an exclusion of his testimony. State v. Edsall, supra; State v. Boutte, 384 So.2d 773 (La.1980).
The testimony of James Bowles was properly admitted.

ASSIGNMENT OF ERROR NO. 2
By this assignment defendant contends that the trial court erred in admitting evidence concerning defendant's alleged flight and in permitting the prosecutor to suggest the commission of other crimes. Of particular concern is the testimony at trial by two state troopers about the auto chase, the auto accident, defendant's later apprehension in Raceland and the discovery of the gun in the defendant's vehicle, all on October 18,1976. Although defense counsel did not object contemporaneously to the testimony of the two officers, the defendant filed prior to trial a "Motion to Exclude Evidence Concerning Defendant's Arrest in Raceland and the events leading up to it", the court's denial of which is sufficient to preserve this issue for review. La.C.Cr.P. 841.
The trial judge, in response to a defense motion, barred the state from questioning witnesses about the Donaldsonville armed robbery. The trial judge did allow the state, through police officer testimony, to put before the jury the sequence of events which began with the pursuit of Parker's Toyota and culminated in his arrest in Raceland and the discovery of the alleged murder weapon in his car. The trial judge allowed this testimony to be presented at trial, notwithstanding a defense offer to stipulate that the incriminating gun was indeed found in Parker's car in Raceland.
The evidence that was admitted was relevant to show the jury how the defendant was associated with the .38 revolver allegedly used two weeks earlier in the Popeye's robbery/murder. The state has the burden to prove its case and can do so by presenting its evidence in court to a jury, despite the defendant's offer to stipulate.
The trial judge correctly barred any testimony about the Donaldsonville armed robbery. That independent criminal activity was not relevant to any issue in the case at bar. The evidence of misdemeanor traffic violations was hardly evidence of other crimes of any significance and did not portray him prejudicially as a "bad man" capable of murder.
Proof of flight from the car containing the .38 revolver connected defendant with the murder weapon. Flight as an expression of guilt only became pertinent in this *841 trial when the defense raised this spectre and protested the use of the Raceland incident at all. It was only in response to the defense motion that the judge was prompted to consider the limits of the flight/guilt rule approved by this Court in State v. Lee, 381 So.2d 792 (La.1980). The trial judge, in deference to defense request, did agree to admonish the jury in accordance with the Lee safeguards:
... [b]efore a jury can consider flight, it must believe that the Defendant was fleeing as a result of the commission of the crime for which the Defendant is on trial. Otherwise, it would not indicate a guilty notice, or they are not to infer such a motive as a result of the Defendant's actions.
This instruction was appropriate. The jury was properly told to consider flight as evidence of guilt only if they believed the men were fleeing the scene of the automobile accident because they had committed the crime for which they were on trial. The instruction probably would have been unnecessary had the defendant not urged a limitation upon the evidence which he viewed as suggesting the possibility of flight because of guilt. Nonetheless, the jury was properly advised in any event and there was no error in what was presented to it for its consideration.
For the aforesaid reasons, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment defendant contends that the trial court erred in denying his motion to suppress items of evidence seized: (1) under a defective warrant for a co-defendant's house; (2) from defendant after an illegal arrest; and (3) from defendant's car after an illegal arrest.
The search warrant, which is the subject of this assignment of error, was issued on November 9, 1976, for Frazier Parker's residence. Upon executing the search warrant, New Orleans Police Officers seized a bank bag and deposit slips marked with Popeye's Store Number 21. This evidence was admitted at trial.
Defendant argues the affidavit fails to establish probable cause for the issuance of the search warrant. He further argues that nowhere in the affidavit does the affiant state that the items listed in the application were taken from the Popeye's Restaurant or that the items would likely be found in the place sought to be searched.
Defendant's argument is without merit. The affidavit recited that defendant, his cousin Frazier Parker, and Henry Walker committed an armed robbery at the Winn Dixie Supermarket located in Donaldsonville, Louisiana, and another establishment, using the same mode of operation as was used in the Popeye's killing. The affidavit said further that the gun found in defendant's vehicle was determined to be the same gun that fired the pellets taken from the Popeye's victims and the wall of the Popeye's Restaurant. It also said Frazier Parker had informed the affiant that his (Parker's) residence had been used in the division of money taken during the robberies and that further such use of the residence was contemplated. These assertions establish probable cause to believe that items of evidence from the Popeye's robbery would be found at Frazier's residence. Thus, the trial court did not err in denying defendant's motion to suppress.
His second and third contentions in this assignment are that his arrest (on October 18th in Raceland) was not based on probable cause and that the search of his vehicle and subsequent seizure of evidence therein was unconstitutional.
A review of the record reveals that the police officers in Raceland had ample grounds to stop the defendant's vehicle, and had probable cause to arrest Gerald Parker. Upon receiving a description of the alleged robbers of the Donaldsonville Winn Dixie, their vehicle, and the direction of their escape, Trooper Price told Trooper Brown that he had just issued a speeding citation to the driver of the vehicle in question (a silver or grey Toyota) who was accompanied by two other black males. The car was headed in Trooper Brown's direction *842 (south towards Raceland, away from the scene of the robbery). A short while later, such a vehicle occupied by three black men passed Trooper Brown. When he sought to have the car pull over, the driver of the Toyota accelerated over the downtown speed limit of 25 mph, moved onto the shoulder of the highway, ignored at least one traffic light and sped through Raceland until crashing to a stop in a roadside ditch. At that point, the men ran from the car, two through a cane field and over a fence. A private citizen had seen the third man, as yet unidentified, going into the hardware store in the vicinity. Gerald Parker was approached by the officers at the hardware store. The officer was thus justified in arresting Gerald Parker without a warrant, especially in light of the defendant's unsolicited statement upon being approached by police that "they made [him] do it." State v. Stewart, 357 So.2d 1111 (La.1978). Thus there is no merit to defendant's assertion that the motion to suppress should have been sustained because it followed an illegal arrest. The arrest of Gerald Parker was legal.
With respect to the defendant's contention that the motion to suppress should have been granted because of the subsequent warrantless search of defendant's automobile, such a search is permissible if it fits under one of the exceptions to the warrant requirement. In this case, exigent circumstances clearly existed.
In State v. Guzman, 362 So.2d 744 at 748 (La.1978), this Court assessed the United States Supreme Court decisions concerning this exception to the warrant requirement.
The cases set out two conditions that must be satisfied before a warrantless search of a movable vehicle is authorized: (1) there must be probable cause to believe that the vehicle contained contraband or evidence of a crime; and (2) there must be "exigent circumstances" requiring an immediate warrantless search, i.e., the impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants, if not arrested, or by someone else. An immediate warrantless search is, therefore, constitutionally permissible when "the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained."
In the instant case circumstances surrounding the entire incident suggest an exigency to search without a warrant. The car was left with at least one door open; the keys were in the ignition; two former occupants of the car were still at large and a crowd had begun to congregate at the scene. Furthermore, the occupants having run from the car in the ditch with the door open, coupled with the officer's having probable cause to believe those running had recently robbed a bank, would strongly suggest to the officers that the automobile's former occupants had no expectation of privacy in the vehicle but rather that they had abandoned the vehicle and disassociated themselves from it. The officers were justified in conducting an on-the-scene search of the vehicle and seizing the evidence taken from the robberies. See State v. Edsall, supra.
This third assignment of error lacks merit. The trial court did not err in denying defendant's motion to suppress.

Decree
For the reasons assigned, defendant's conviction and sentence are affirmed.
AFFIRMED.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I respectfully concur.
I continue to disagree with the majority's view that the Swain rule is the exclusive constitutional safeguard against official racial discrimination in jury selection.
The Louisiana Constitution provides greater protection from race-based discrimination than does the dubious rationale of Swain. See La. Const, art. I § 3; State v. Perry, (Dennis, J., dissenting) (1982); State v. Eames, 365 So.2d 1361, 1364 (La.1978) *843 (Dennis, J., concurring). In Louisiana, a showing of long-standing, systematic discrimination should not be needed to raise an inference of racial discrimination. Hargrave, Developments in the LawLouisiana Constitutional Law, 41 La.L.Rev. 528, 533 (1981). When a defendant proves a de facto exclusion of blacks in his single case, then the burden of proof falls upon the state to show that the exclusion was not based on race. Id. State v. Eames, supra, (Dennis, J., concurring).
However, in this case, a hearing was held by the trial judge and the evidence warrants his finding that the state's peremptory challenges were not exercised on the basis of race.
Therefore, I respectfully concur.
NOTES
[*] Judges William H, Byrnes, III and David R.M. Williams of the Court of Appeal, Fourth Circuit and Judge Thomas C. Wicker, Jr. of the Twenty-Fourth Judicial District Court, participated in this decision as associates justices ad hoc, joined by Chief Justice John A. Dixon Jr. and Associate Justices Pascal F. Calogero, Jr., James L. Dennis, and Jack C. Watson.
[1] Defense counsel filed with this Court thirty nine assignments of error, some of which were not briefed or argued. Those assignments not briefed or argued are deemed abandoned. State v. Gibson, 359 So.2d 147 (La.1978); State v. Mallett, 357 So.2d 1105 (La.1978); State v. Lewis, 351 So.2d 1193 (La.1977); State v. Collins, 350 So.2d 590 (La.1977); State v. Jones, 340 So.2d 563 (La. 1976).
[2] Frazier and Gerald Parker were jointly charged by grand jury indictment with two counts of first degree murder in violation of La.R.S. 14:30. Frazier Parker successfully moved for a severance, after which the case against him was dismissed for lack of evidence.
[3] It was during this time that the defense moved that Bowles' testimony be excluded because the time cards violated the hearsay rule and because Bowles had been present in the courtroom briefly while Gerald Parker was on the witness stand. Both were denied by the trial judge, the validity of which will be treated later in this opinion.
[4] As noted in State v. Bias, 393 So.2d 677 (La. 1981), La.C.Cr.P. 727 is identical to Federal Rule of Criminal Procedure 12.1. The rule as originally proposed by the United States Supreme Court would have required that the government only inform the defendant of those witnesses on whom it intended to rely to place the defendant at the scene of the crime. The Committee expanded the prosecution's obligation to inform the defense, with the conjunctive requirement that the prosecution turn over the names of those witnesses to be called in rebuttal to the defendant's alibi witnesses. See, 18 U.S.C.A. Fed.Rules Cr.Proc. rule 12.1.
[5] In State v. Bias, 393 So.2d 677 (La. 1981), this Court adopted as factors to be considered in determining whether the trial court properly exercised its discretionary power under this article, those enumerated in United States v. Myers, 550 F.2d 1036 (5th Cir.1977). As they appear in Bias, supra at 778-79, the factors are:

[A] district court should consider (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors rising out of the circumstances of the case. Cf., Advisory Committee Notes on rule 16 of the Proposed Rules of Criminal Procedure, 39 FRD 69, 178 (1966). (footnote omitted).
[6] In Perniciaro, 374 So.2d at 1247, we reaffirmed our statement in State v. Monroe, 345 So.2d 1185 at 1190 (La.1977) to the effect that

[b]efore the exception may be invoked by the State against the defendant, allowing introduction of a permanent record made in the ordinary course of business from personal knowledge of the facts recorded, or from information furnished by one having a business duty to observe and report the facts, it must be shown that the person who made the record is genuinely unavailable for testimony, that he had no strong motive to misrepresent, and that in all probability the evidence is trustworthy.