576 So.2d 111 (1991)
STATE of Louisiana, Appellee,
v.
Gerald KELLY, Appellant.
No. 22211-KA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1991.
Writ Denied May 24, 1991.
*113 Robert S. Tew, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., William B. Faust, III, Asst. Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., Lee E. Ineichen, Asst. Dist. Atty., Monroe, for appellee.
Before SEXTON, LINDSAY and VICTORY, JJ.
LINDSAY, Judge.
The defendant, Gerald Kelly, was convicted of three counts of armed robbery after a jury trial. He was sentenced to serve three consecutive terms of thirty-three years at hard labor, without benefit of probation, parole or suspension of sentence. The defendant appeals. For the following reasons, we affirm the defendant's convictions and sentences.

FACTS
The record reveals that during a two-week period in January of 1989, the defendant committed armed robberies at several grocery stores in the Monroe area. At his trial, the defendant was identified as the perpetrator of the robberies occurring at the Brookshire grocery store on January 15, 1989, the Best Way grocery store on January 25, 1989, and the A & P grocery store on January 29, 1989.
On January 15, 1989, at about 8:30 p.m., the defendant, armed with a sawed-off shotgun with silver duct tape on the gun butt and what appeared to be a .45 caliber automatic pistol, committed an armed robbery at a Brookshire's grocery store. He *114 wore a camouflage jacket and a black mask. He held several employees and customers at gunpoint while forcing a female employee to open the office safe and empty its contents into a green duffel bag. Approximately $10,000 was stolen. Prior to the robbery, witnesses observed a white male in a car parked near the store. Another witness noticed another parked car which drove away shortly after the robbery.
On January 25, 1989, an armed robbery occurred at the Best Way grocery store between 8:30 to 8:45 p.m. The defendant and another man, both wearing jumpsuits, camouflage jackets, and stocking masks, entered the store. The defendant was armed with a sawed-off shotgun. His companion was armed with what appeared to be a pistol. (The store owner later identified the second man as Kevin Hudson, a co-worker of the defendant.) The defendant forced the store owner to place more than $7,000 in cash, plus food stamps and checks, into a green duffel bag. Prior to the robbery, an employee at a nearby Cracker Barrel store saw a white male in a car parked near Best Way. She later identified the man as the defendant's brother, Tommy Kelly.
On January 29, 1989, the defendant committed an armed robbery at the A & P grocery store at about 7:20 to 7:30 p.m. On this occasion, the defendant was armed with a pistol and wore a stocking mask, a blue baseball cap and a yellow rain poncho. An assistant manager who observed the robbery through a security window summoned the police. (This witness positively identified the defendant at trial as the person who committed the robbery.) The defendant forced an employee to place $4,500 in cash, $5,600 in checks, and an unspecified amount of blank money orders and stamps in the green duffel bag. In his haste to flee, the defendant dropped his weapon (a BB gun which resembled a .45 automatic pistol) and the bag. He also dropped his cap.
Two off-duty police officers who lived near the grocery store responded to a police radio call concerning the robbery. Upon arrival at the scene of the robbery, Officer Kenneth Hancock pursued the defendant on foot to a nearby apartment complex, while Officer Paul Harper drove around the complex in his private vehicle. During his pursuit of the defendant, Officer Hancock found the defendant's discarded yellow poncho on the ground, then observed a red Lincoln Continental with a temporary license tag drive away. Officer Hancock reported this information to Officer Harper, who pursued the Lincoln in his private vehicle. Other police units joined the pursuit, and a high speed auto chase ensued. The defendant finally stopped the car and fled on foot.
A search of the Lincoln revealed a loaded sawed-off shotgun, a black bag containing another BB gun, and numerous personal documents belonging to the defendant. Also found were several $1 bills.
The police located the defendant at his mother's house in Bastrop, Louisiana, at about 10:20 that night. The defendant claimed that a black male had kidnapped him after 5:00 p.m. that evening and stolen his car, leaving him on the side of the road bound with duct tape. The defendant and several officers went to the site where he was allegedly abandoned. However, the officers found no physical evidence to support the defendant's claims.
The police obtained a search warrant for the defendant's apartment. The bag recovered from the grocery store was determined to be a helicopter helmet bag. At the apartment of the defendant, who had recently been discharged from the Army, the officers located a helmet which fit into the bag. They also found duct tape similar to that on the butt of the shotgun, as well as knee-hi panty hose (which could be used as stocking masks). Also found were shotgun shells and BB pellets.
The defendant was charged with seven counts of armed robbery. After a hearing on the defendant's motion to sever, the trial court ordered severance of one count. Thereafter, the district attorney amended the bill of information to six counts, then to three counts for the robberies described above.
*115 The defendant filed a motion to suppress the evidence which had been seized during the warrantless search of the Lincoln, and the resulting search of his apartment. After a hearing, the motion was denied by the trial court. The defendant's subsequent writ application was also denied.
The defendant's trial commenced on July 24, 1989. Among the witnesses testifying on behalf of the prosecution was the defendant's brother, Tommy Kelly. Tommy stated that the defendant had initiated and carried out all three of the robberies. Tommy admitted that he had served as the lookout, determining if there were any police or security officers inside the grocery stores and then continuing surveillance from his vehicle out in the parking lot. He was to alert the defendant to the presence of any police officers by flashing his automobile lights. He also testified that the defendant committed all of the armed robberies, and was assisted in the Best Way robbery by a co-worker, Kevin Hudson. He testified that on the night of the A & P robbery, he drove away from the store when a police car arrived on the scene. However, he later picked up the defendant and drove him to their mother's house in Bastrop, Louisiana. During the drive to Bastrop, the defendant informed Tommy that he intended to tell the police that his car had been stolen. On July 28, 1989, the jury convicted the defendant as charged on all three counts of armed robbery.
On October 4, 1989, the defendant filed a motion for new trial. In his motion, the defendant alleged that he had received a note from another inmate at the Ouachita Parish Jail stating that he had heard a third inmate confess to two of the robberies. After a hearing, the motion was denied.
On December 20, 1989, the defendant was sentenced to serve three consecutive terms of thirty-three years at hard labor without benefit of probation, parole or suspension of sentence.
The defendant appealed. He assigned as error the following: (1) the trial court erred in failing to sever each of the three charges; (2) the trial court erred in denying the motion to suppress; (3) the jury verdict was contrary to the weight and sufficiency of the evidence; (4) the trial court erred in denying the defendant's motion for mistrial; (5) the trial court erred in denying the defendant's motion for new trial; and (6) the trial court erred in imposing an excessive sentence.

MOTION TO SEVER
The defendant contends that the trial court erred in failing to sever each of the three charges. In response to the defendant's motion to sever, the trial court ordered one of the seven initial counts of armed robbery to be severed, but denied the motion as to the remaining six counts. Before trial, the district attorney amended the bill to charge the defendant with three counts.
The three counts of armed robbery were properly joined in a single bill of information because they were of the same or similar character and were triable by the same mode of trial. LSA-C.Cr.P. Art. 493. However, a defendant properly charged with several counts in a single bill of information may request a severance of the offenses for trial. LSA-C.Cr.P. Art. 495.1 provides:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
A motion for severance is addressed to the sound discretion of the trial court and the court's ruling should not be disturbed on appeal absent a showing of an abuse of discretion. State v. Williams, 418 So.2d 562 (La. 1982); State v. Celestine, 452 So.2d 676 (La. 1984). Factors to be considered by the trial court in determining whether prejudice may result from joinder include: whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes *116 charged would be used by the jury to inter a criminal disposition; and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Washington, 386 So.2d 1368 (La.1980); State v. Celestine, supra.
In many instances, the trial court can mitigate any prejudice from joinder of offenses by providing clear instructions to the jury. The prosecutor may further curtail any prejudice with an orderly presentation of evidence. State v. Horton, 458 So.2d 445 (La. 1984); State v. Celestine, supra; State v. Labuzan, 480 So.2d 420 (La.App. 4th Cir. 1985).
In the present case, all three armed robberies involved a relatively straightforward factual situation. The state carefully presented the evidence in an orderly, compartmentalized fashion such that the evidence of the three robberies was presented in chronological order. Such a presentation allowed the jury to adequately segregate the various charges and evidence. There is no indication that the defendant was confounded in presenting his various alibis for the different dates in question, or that the jury might have inferred a criminal disposition. Nor was the nature of the crimes such that the charging of several counts would make the jury hostile.
The jury was obviously aware that the defendant was charged with three separate offenses, each of which required a separate verdict, and that the evidence of one offense could not be considered as evidence of the other offenses. The jury was supplied with separate responsive verdicts for each of the three offenses, each containing the name of the appropriate grocery store and victim. The jury returned three separate verdicts.
Our review of the record demonstrates that the defendant was not prejudiced by the joinder of the three armed robbery offenses for trial. Consequently, the trial judge did not abuse his discretion in denying the defendant's motion to sever. This assignment of error is without merit.

MOTION TO SUPPRESS
The defendant argues that the trial court erred in denying his motion to suppress the evidence seized as a result of the warrantless search of his car. The defendant contends that, although the car was abandoned after the high speed chase through Monroe, the search was nonetheless illegal because the police lacked reasonable cause to begin the pursuit. Thus, the evidence discovered in the search of the car should be suppressed. Additionally, the defendant argues that the court should have suppressed all evidence obtained in the search of his apartment because the search warrant was obtained in reliance upon information found in the car (i.e., documents supplying the defendant's identity).
LSA-C.Cr.P. Art. 215.1 authorizes a police officer to stop a person in a public place for questioning when he reasonably suspects that person is committing, has committed or is about to commit a criminal offense. These principles are also applicable to an investigatory stop of an automobile. See State v. Colvin, 494 So.2d 1357 (La.App. 2d Cir. 1986), writ denied 497 So.2d 311 (La.1986).
The officers were in close pursuit of a fleeing felon. Officer Hancock, who had pursued the suspect on foot into a nearby apartment complex, found the suspect's yellow rain poncho discarded near the Lincoln, which pulled away. The officers' belief that the Lincoln was the suspect's getaway vehicle was reasonable under the circumstances, and well founded. Thereafter, the police officers following the Lincoln observed the car speeding dangerously and being operated in a reckless manner which threatened the lives of innocent citizens. The police obviously had reasonable cause to pursue the Lincoln.
Having determined that the police had reasonable grounds to pursue the Lincoln, we must next address the legality of the warrantless search of the car after it was finally stopped. Under the automobile emergency exception to the search warrant requirement, a constitutional search of a vehicle may be made without a warrant (1) if there is probable cause to believe that *117 the vehicle contains contraband or evidence of a crime, and (2) exigent circumstances require an immediate search. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Chaney, 423 So.2d 1092 (La.1983); State v. Cohen, 549 So.2d 884 (La.App. 2d Cir.1989), writ denied 559 So.2d 135 (La.1990). Furthermore, an abandoned automobile may be legally searched without a warrant. See State v. Parker, 421 So.2d 834 (La. 1982), cert. denied 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983), and State v. Nieves, 525 So.2d 1203 (La.App. 5th Cir. 1988).
Exigent circumstances have been defined as the impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants, if not arrested, or by someone else. An immediate warrantless search is therefore constitutionally admissible when "the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." State v. Chaney, supra.
Given probable cause to search, the police may seize and hold a car before presenting the probable cause issue to a magistrate or carry out an immediate search without a warrant. Either course would be reasonable under the Fourth Amendment. State v. Holmes, 467 So.2d 1177 (La.App. 2d Cir.1985), writ denied 470 So.2d 119 (La.1985).
In State v. Parker, supra, three suspects in an armed robbery were pursued by the police, who observed the driver commit several traffic violations. The suspects crashed their car into a ditch and fled the vehicle before the officers could apprehend them. The car was left with the door open and the keys in the ignition. Only one of the three suspects was apprehended, thus leaving two former vehicle occupants still at large. The Supreme Court found that the circumstances surrounding the incident suggested an exigency to search without a warrant.
Furthermore, the occupants having run from the car in the ditch with the door open, coupled with the officer's having probable cause to believe those running had recently robbed a bank, would strongly suggest to the officers that the automobile's former occupants had no expectation of privacy in the vehicle but rather that they had abandoned the vehicle and disassociated themselves from it. The officers were justified in conducting an on-the-scene search of the vehicle and seizing the evidence taken from the robberies. [Citation omitted.]
421 So.2d at 842.
In the present case, the search of the defendant's Lincoln obviously fits within the automobile exception to the warrant requirement. The officers had probable cause to search the Lincoln because it matched the description of the vehicle in which an armed robbery suspect had fled the crime scene. The officers following the Lincoln observed that the car initially proceeded at a normal pace, then accelerated dangerously after the driver ascertained that he was being followed. At one point, the Lincoln was going 85 to 100 miles per hour in residential areas.
When the driver finally stopped the Lincoln, he fled on foot despite a police officer's order to halt. He left behind the keys to the vehicle, which were secured by one of the officers. The officers ascertained that there was no one else in the vehicle and observed a sawed-off shotgun in the front seat. However, the suspect remained at large, and the car and the evidence within were subject to removal by anyone who might wish to do so. Under these circumstances, the officers were clearly authorized to search the defendant's automobile pursuant to the automobile emergency exception.
Furthermore, the police were entitled to search the Lincoln as an abandoned vehicle. When property has been abandoned, a person's property interest in it lapses, and there is no further reasonable expectation of privacy. As a consequence, the property may be searched and seized without the normally required warrant. State v. Kyles, 513 So.2d 265 (La.1987), cert. denied, 486 U.S. 1027, 108 S.Ct. 2005, *118 100 L.Ed.2d 236, rehearing denied 487 U.S. 1246, 109 S.Ct. 4, 101 L.Ed.2d 955 (1988).
If, prior to the abandonment of the evidence, there is an unlawful intrusion into the defendant's constitutional right to be left alone, then the evidence is unlawfully seized. An unlawful intrusion occurs when there is an actual stop without reasonable cause or when a stop without reasonable cause is imminent. State v. Littleberry, 511 So.2d 1229 (La.App. 2d Cir. 1987). However, when a stop is reasonable, the officers may search and seize property that is abandoned in response to the stop. State v. Washington, 513 So.2d 358 (La.App. 4th Cir.1987).
Courts have frequently admitted into evidence objects found by the police during the examination of an abandoned vehicle. Sometimes this is done on the ground that the defendant, by abandoning the vehicle, had no standing to object [footnote omitted], and sometimes on the more general ground that such an examination is not a search under the justified-expectation-of-privacy test of Katz v. United States, [389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)]....
LaFavre, Search and Seizure, 2nd Edition, § 2.5(a) (West Publishing Co.1987).
Courts have also found cars to be abandoned when it appeared that the operator of the vehicle left the car behind in an effort to avoid apprehension by the police. Sometimes the car had actually been pursued by the police for some distance, after which the driver jumped from the car and fled on foot. [Footnote omitted.]
Id. See also State v. Nieves, supra.
As previously noted, the police had reasonable cause to pursue and stop the defendant. After the defendant fled from the Lincoln in an attempt to elude the police and disassociate himself from the car, the officers were entitled to search it as an abandoned vehicle. The evidence in the car, which revealed the defendant's identity and led to his development as a prime suspect in the robberies, was legally seized. Consequently, the warrant to search the defendant's apartment was properly obtained, and the additional evidence found there was admissible.
The trial court committed no error in denying the motion to suppress. This assignment of error is without merit.

SUFFICIENCY OF EVIDENCE
The defendant argues that the verdicts are contrary to the law and the evidence. He maintains that the testimony of his brother Tommy was unbelievable. He further claims that the testimony of William Edward Weeks, Jr., the witness who positively identified the defendant as the A & P robber, was unreliable because of the distance between Weeks and the perpetrator, who was wearing a stocking mask.
Under the standard of review enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Magouirk, 561 So.2d 801 (La.App. 2d Cir. 1990).
Where the conviction is based upon circumstantial evidence, LSA-R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. However, R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula. It is merely an evidentiary guide for the jury when considering circumstantial evidence. State v. Heck, 560 So.2d 611 (La.App. 4th Cir.1990), writ denied 566 So.2d 395 (La.1990).
Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." LSA-R.S. 14:64(A).
The defendant's brother testified that he acted as a lookout while the defendant directly *119 participated in all three robberies. He also testified that the defendant's co-worker, Kevin Hudson, was involved in the Best Way robbery. Tommy's testimony was independently verified by that of other witnesses. Tommy Kelly was positively identified by the Cracker Barrel clerk as the white male she saw sitting in the vehicle near the Best Way store shortly before the robbery. Another witness positively identified Hudson as the second man involved in the Best Way robbery. Weeks, a witness to the A & P robbery, positively identified the defendant as the perpetrator. Weeks had an unobstructed view of the defendant as he observed the robbery unnoticed from behind a security window, and, unlike the young female store clerk being robbed, he was not distracted by a gun being waved in his face. Additionally, the defendant fit the general description given by the witnesses of the white male who committed all three robberies.
Furthermore, the physical evidence confirmed the defendant's guilt. The sawed-off shotgun, with its distinctive duct tape wrapped around the butt of the weapon, was recovered from the defendant's Lincoln. Matching duct tape was found in the defendant's apartment. The bag used in the robberies was determined to be a helicopter helmet bag. The defendant was a former army helicopter crew member and a helmet which fit into the bag was recovered from the defendant's apartment.
The evidence also demonstrated the defendant was in financial distress at the time of the robberies. However, after the commencement of the robberies, the defendant purchased the Lincoln for $5,200 in cash.
The jury rejected the defendant's testimony in which he claimed that his Lincoln was stolen by an unknown black male immediately prior to the A & P robbery and that his brother was involved in the robberies and had personal reasons for discrediting him. Obviously, the jury found the defendant's alibis unbelievable and accepted the testimony of the state's witnesses as credible. Credibility of witnesses is a matter left to the discretion of the trier of fact. It is not a function of a reviewing court on appeal of a criminal conviction to evaluate the credibility of witnesses. State v. Magouirk, supra.
In summary, we find that, viewed in the light most favorable to the prosecution, any rational trier of fact could have concluded that the defendant was guilty of every essential element of the crime. The defendant was identified as the perpetrator of each robbery. In each instance, he took large sums of money and negotiable instruments from a store employee while threatening the employee with a dangerous weapon. In the first two robberies, a sawed-off shotgun was used. In the last robbery, the defendant used a BB gun, a dangerous weapon, i.e., an instrument "which, in the manner used, is calculated or likely to produce death or great bodily harm." LSA-R.S. 14:2(3). See State v. Woods, 494 So.2d 1258 (La.App. 2d Cir.1986).
This assignment of error has no merit.

MOTION FOR MISTRIAL
The defendant contends the trial court erred in denying his motion for mistrial based upon the district attorney's attempt to introduce evidence of other crimes.
While cross-examining Mike King, a defense witness who testified as to the defendant's generally good character and reputation, the district attorney asked Mr. King if he had ever heard of the defendant possessing marijuana.[1] Defense counsel immediately objected, and the trial court sustained the objection. The witness made no response to the question.
After Mr. King was dismissed from the witness stand, and outside of the presence of the jury, the defense moved for a mistrial under LSA-C.Cr.P. Art. 770. The motion was denied. No request was made for an admonishment to the jury to disregard the question.
The Article 770 inquiry is not whether the remark or comment by the district attorney *120 in the presence of the jury is admissible, but whether evidence of the other crime is or would be admissible. State v. Green, 478 So.2d 583 (La.App. 2d Cir. 1985).
A character witness may be cross-examined about specific instances of the defendant's conduct to test his knowledge of the defendant's reputation and to establish his standard of evaluation. LSA-C.E. Art. 404(A)(1) and 405(A). Also, see State v. Rault, 445 So.2d 1203 (La. 1984), cert. denied 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984), in which the Supreme Court found that cross-examination of a character witness could extend "to his knowledge of particular misconduct, prior arrests, or other acts relevant to the moral qualities pertinent to defendant's crime."
The defendant chose to place his character at issue by introducing evidence of his good character. Consequently, the state was entitled to rebut that information and test the witness's true knowledge of the defendant's character, including his knowledge of whether the defendant was a possessor of illegal drugs. Thus, the information that could have been elicited by the question would have been admissible.[2]
The defendant further complains that the trial court failed to give the jury an admonition to disregard the unanswered question. However, the defendant made no request for an admonition to disregard. When a defendant's objection to an allegedly improper remark is sustained, and the court is presumably willing to give him whatever relief to which he is entitled, the defendant must make a request for an admonition, if he wants one, in order to preserve the issue for appeal. See State v. Grant, 531 So.2d 1121 (La.App. 4th Cir. 1988).
The trial court did not err in denying the defendant's motion for mistrial, nor did the trial court err in failing to admonish the jury to disregard the district attorney's question. This assignment of error is without merit.

MOTION FOR NEW TRIAL
The defendant argues that the court erred in denying his motion for new trial based on newly discovered evidence. LSA-C.Cr.P. Art. 851(3).
The test in determining whether a motion for new trial based on newly discovered evidence should be granted is whether the new evidence is so material that it ought to produce a different result from the verdict rendered at trial. The trial court's decision on a motion for new trial will not be disturbed absent a clear abuse of discretion. State v. Buchanan, 439 So.2d 576 (La.App. 1st Cir.1983). Furthermore, the trial court has the discretion to deny a new trial when it is sought on the grounds of newly discovered evidence which is suspicious or incredible. State v. Lee, 340 So.2d 180 (La. 1976); State v. Hall, 454 So.2d 409 (La.App. 4th Cir. 1984).
In support of his motion for new trial, the defendant presented the testimony *121 of inmate Charles Lawton. Lawton testified that another inmate, George Balsamo, had admitted committing the robberies. Balsamo allegedly stated that he wore a brown jumpsuit, drove a van in at least one robbery, and concealed his identity with a bandana. However, the victims of the robberies testified that the robbers wore blue jumpsuits, and used stocking or ski masks to conceal their identities. None of the witnesses ever saw a van involved in any of the robberies.
The trial court denied the motion for new trial, dismissing Lawton's testimony as "preposterous." We find no abuse in the exercise of the trial court's discretion in denying the motion. The alleged confession of Balsamo directly contradicted the trial testimony of all of the witnesses to the robberies. The trial court properly concluded that the new evidence was incredible and thus unlikely to produce a different result from that reached at trial.
This assignment of error is meritless.

EXCESSIVE SENTENCE
The defendant argues that the trial court erred in imposing an excessive sentence. He concedes that the trial court adequately complied with the sentencing guidelines of LSA-C.Cr.P. Art. 894.1. However, he contends that the consecutive sentences of 33 years at hard labor, without benefit of parole, probation or suspension of sentence, on each of the three counts of armed robbery are excessive.
In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C.Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La. 1983).
After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La. App. 2d Cir.1983).
A sentence is unconstitutionally excessive in violation of La. Const. 1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La. App. 2d Cir.1983), writ denied 438 So.2d 1112 (La.1983). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La. 1983).
The defendant argues that the sentences are excessive because he had no prior convictions and he was honorably discharged from the United States Army. Additionally, the defendant had a substantial work record.
However, according to information in the presentence investigation (PSI) report, the defendant was terminated from his employment with International Paper Company in 1978, after several counseling attempts, because of deliberate and repeated misconduct. His most recent employer, Manville Corporation, indicated the defendant "was less th[a]n desirable" as an employee and would not be considered for reemployment.
While the defendant had no prior criminal convictions, his present convictions arise from a systematic and dangerous *122 criminal spree which endangered the lives of numerous innocent individuals. During the first robbery, the defendant repeatedly pointed a weapon at several employees and customers, while also armed with a sawed-off shotgun. He particularly menaced a female cashier in the office. Several employees were badly distressed by the robbery. As he exited the store the defendant nonchalantly told his victims to have "a nice day." During the second robbery, the defendant held a sawed-off shotgun on the store owner as he complied with the defendant's order to fill a bag with money, repeatedly telling the man that "his time was running out." In the course of the third robbery, the defendant brandished a gun in the face of the female cashier. The assistant manager who observed the robbery through a security window thought the defendant was going to shoot the cashier. After this robbery, the defendant led the police on a high speed car chase through town which endangered not only the police officers in pursuit, but also numerous motorists and pedestrians.
The defendant still faces three other armed robbery charges. He also has pending charges of attempted simple escape and introduction of contraband into a penal institution.
The offense of armed robbery carries a term of imprisonment at hard labor from five to 99 years, without benefit of parole, probation or suspension of sentence. The trial court imposed upon the defendant a sentence of 33 years at hard labor, or one-third of the maximum possible penalty, on each of the three counts. The trial court then directed that the sentences for these separate and distinct crimes be served consecutively, as the court was entitled to do under LSA-C.Cr.P. Art. 883.
The thirty-four-year-old defendant, who comes from a good family wherein he suffered no economic or social deprivation, wantonly threatened the lives of innocent individuals during his criminal activities. In addition to terrorizing his victims, he also inflicted great financial hardship upon them and/or their employers. In the PSI report, the owner of the Best Way store stated that the robbery set into motion a series of events which eventually led to the sale of the store.
The defendant is obviously a menace to society from whom the citizenry must be protected. Given all of the facts set forth in this record, we find that the defendant's sentences are not excessive.
This assignment of error is meritless.

CONCLUSION
The convictions and sentences of the defendant are affirmed.
AFFIRMED.
NOTES
[1] The district attorney was aware that evidence presented at the motion to suppress revealed that marijuana had been found during the search of the defendant's apartment.
[2] Although not assigned as error, we note that the state failed to lay a proper predicate outside the presence of the jury for introduction of this evidence as required by State v. Johnson, 389 So.2d 372 (La. 1980). However, no defense objection on this basis was made. The state had filed a motion in limine for a Johnson hearing to determine what instances of misconduct by the defendant could be used in cross-examination of his character witnesses. Additionally, the state had previously given the defendant notice of its intent to introduce evidence of the defendant's possession of marijuana.

Although no Johnson hearing was held, the state's question to the character witness was in substantial compliance with the standards set forth in Johnson, supra. The district attorney had reasonable grounds for cross-examining the character witness about the misconduct, and asked if the witness "had heard" of the misconduct.
No undue prejudice occurred. The jury had already heard testimony from Tommy Kelly, elicited by the defense on cross-examination, that he had been present when the police found a box of marijuana in the defendant's possession. Tommy also testified on cross-examination that he had been told that it was common knowledge in the neighborhood that the defendant was dealing drugs at a fireworks stand and was going to be arrested.
In view of the foregoing, if error was committed in not holding a Johnson hearing, it was harmless error under the facts of this case. The evidence was admissible, but the question was never answered by Mr. King. Furthermore, the evidence in the record of the defendant's guilt of all three armed robberies was overwhelming.