423 So.2d 1092 (1982)
STATE of Louisiana
v.
Gregory CHANEY.
STATE of Louisiana
v.
Johnny HERMAN.
Nos. 81-KA-3297, 82-KA-0014.
Supreme Court of Louisiana.
November 29, 1982.
Rehearing Denied January 7, 1983.
*1094 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for plaintiff-appellee in both cases.
John Diguilio, Asst. Dist. Atty., for plaintiff-appellee in No. 81-KA-3297.
Ralph Roy, Asst. Dist. Atty., for plaintiff-appellee in No. 82-KA-0014.
David R. Buckley, Baton Rouge, for defendant-appellant in both cases.
*1095 Bonnie P. Jackson, Michele Fourne, Public Defenders Office, Baton Rouge, for defendant-appellant in No. 81-KA-3297.
John Comish, Office of the Indigent Defender, Baton Rouge, for defendant-appellant in No. 82-KA-0014.
WILLIAMS, Justice Pro Tem.[*]
Defendants Gregory Chaney and Johnny Herman were charged by bills of information with two counts each of armed robbery in violation of La.R.S. 14:64. After joint trial by jury, defendants were found guilty of two counts of simple robbery. Defendant Chaney was sentenced to serve five years at hard labor on each count. The sentences were to run consecutively. The state filed a multiple offender bill against defendant Herman, and he was found to be a second felony offender. He was sentenced to serve seven years at hard labor on each count, the sentences to run consecutively. On appeal, defendant Chaney urges fourteen assignments of error; defendant Herman urges nineteen assignments of error.

FACTS
Donald Franklin was robbed between 11:15 and 11:20 p.m. on March 27, 1980. He was a clerk at a convenience store in East Baton Rouge Parish. Franklin was alone when a black male, whom he later identified as defendant Herman, entered the store. Defendant was wearing gray pants and a black shirt. Franklin asked Herman if he needed help, and defendant said that he wanted a pack of cigarettes. When Franklin went behind the counter to get the cigarettes, Herman told him to hand over all of the money. The victim gave defendant twenty-seven dollars, including a two dollar bill that was used by the store as "bait money." It had been photocopied on both sides. Herman then left the store. He had kept his left hand over his face and his right hand in his pocket while he was in the store. Franklin called the police, and, as he was talking on the telephone, observed a 1970 or 1971 tan or dull green car pull up to a stop sign across the street from the store. The headlights were not on at that time, but Franklin noticed that they were turned on as the car headed toward Sherwood Boulevard where the second robbery occurred.
At approximately 11:30 p.m., Rita Cornwell, the cashier at another convenience store in East Baton Rouge Parish, was robbed. A black male wearing gray pants and a black shirt entered the store and asked her for a pack of cigarettes. She identified the man as defendant Herman. Herman paid for the cigarettes with a two-dollar bill. When Cornwell tried to give defendant change from the two-dollar bill, he demanded the money from the cash register and from the safe. She gave him the money from the register, but explained to him that the safe was locked. He instructed her to give him money from a change box. Defendant took approximately one hundred and ninety dollars in bills and rolled coins along with the two-dollar bill. He took a white plastic change box from the store. The change box was a plastic bucket that had been taped closed. Cornwell stated that defendant threatened to shoot her if she did not give him the money. She saw Herman leave the store and enter the passenger side of a car. She was unable to identify the driver of the car, but did notice that newspaper had been taped over the license plate and that the headlights were not turned on.
The police stopped defendants in their car a short time later. The white plastic change box, rolls of coins, and currency were seized. Both men were arrested and each was charged with two counts of armed robbery.

ARGUMENT NUMBER 1
(Assignments of Error Number 1 and 10)
Defendants argue that the trial court erred in not suppressing evidence seized from their car and from themselves.
*1096 At the hearing on the motion to suppress, Officer Gary Starkey of the Baton Rouge City Police Department, testified as follows. At about 11:30 p.m. on March 27, 1980, he received a broadcast over his radio that an armed robbery had taken place at the first convenience store. The broadcast described the suspect as a black male wearing a black shirt and gray pants. About ten minutes later, he received another broadcast that an armed robbery had taken place at the second convenience store. Once again, the suspect was described as a black male wearing a black shirt and gray pants. The broadcast also stated that the suspect was a passenger in a dark-colored or green car being driven by another black male. The car left the scene of the second crime with a newspaper taped over its license plate. Starkey testified that he and his partner drove to a parking lot on Greenwell Springs Road because it was a logical place for the robbers to pass. After ten minutes, a green car passed by, proceeding away from the area where the robberies occurred. The officers, in an unmarked car, began to follow. There were two black males in the car. The officer testified that both the passenger and driver were staring at something in the passenger's lap. The police followed the car and asked headquarters for a more complete description. The men in the vehicles, the defendants, began shuffling something under the seat. Both men were moving their arms, as the driver continued to look in the direction of the passenger's lap. The officer testified that as they followed defendants' car, the driver ran a red light, speeded up, and skidded. At that time the officer turned on the sirens and lights in order to stop defendants. The driver, defendant Herman, got out of his car at the same time the officers got out of the police car. He was wearing a black shirt and gray pants and fit the descriptions given to the police. Defendant Chaney was ordered to get out of the car, and both men were frisked. Looking into the car, Officer Sharkey observed a taped plastic bowl on the floorboard; the bowl contained rolls of coins. He also saw money sticking out of the glove compartment. The police then radioed headquarters and were told that a taped bowl of coins was taken during the second robbery. Defendants were informed of their constitutional rights and arrested. The police seized the money, the plastic bucket, a steak knife, and a whiskey bottle from the car.
Defendants assert three reasons for the suppression of the evidence seized: (1) that the police did not have reasonable cause to stop defendants' vehicle, and any evidence seized from the car, therefore, is "fruit of the poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); (2) the police did not have probable cause to arrest defendants; and (3) the search of defendants' car was unconstitutional.

INVESTIGATORY STOP
Article 215.1 of the Louisiana Code of Criminal Procedure provides in part:
"A law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or misdemeanor and may demand of him his name, address and an explanation of his actions."
See also Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Such a stop is based on reasonable cause, a somewhat lesser standard than probable cause. State v. Rodriguez, 396 So.2d 1312 (La. 1981). Reasonable cause to stop a suspect is determined on a case by case basis by assessing whether the police had sufficient knowledge of facts and circumstances to justify an infringement upon an individual's right to be free from government interference. State v. Rodriguez, supra; State v. Frisch, 393 So.2d 1220 (La.1981).
In this case, the police officers clearly would have had reasonable cause to stop defendants had they actually run a red light. The trial judge, however, in denying the motion to suppress, stated that he would assume for the purpose of his ruling, that defendants had not run a red light. Our examination of the evidence leads us to conclude that the police had reasonable *1097 cause to stop defendants' car had it not run the red light. Defendants were travelling in a car that was the same color as the radioed description. The car was travelling on a road that led out of the area where the robberies occurred, and arrived where the police officers were staked out at approximately the time that it would have taken the robbers to reach the police. There were two black males in the car; the officers knew that the robber had an accomplice. The defendants were engaged in somewhat erratic behavior; moving their arms around, staring at something in Chaney's lap, and trying to stuff something under the seat. Although it is unlikely that any one of these facts would have supplied reasonable cause for the police to stop defendants, the totality of circumstances clearly provided reasonable cause for police to stop defendants.

DEFENDANTS' ARREST
Defendants were placed under arrest after their car was stopped by the police and the police discovered that defendant Herman fit the description of the robber and that he was wearing clothing similar to that described by the victims.
An arrest can be made without a warrant provided that it is based on probable cause. E.g., State v. Finklea, 313 So.2d 224 (La.1975). Probable cause to arrest exists when the officer has reasonable and trustworthy information about facts and circumstances sufficient to sustain the belief of a reasonable man that the person has committed or is committing a crime. La.C. Cr.P. art. 213; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Thomas, 349 So.2d 270 (La. 1977); State v. Phillips, 347 So.2d 206 (La. 1977).
After the police stopped defendants, one of the officers shone a flashlight in the car and looked through the window. He observed the money and plastic bowl taken in the robberies. At that point, defendants were arrested.
It is clear that at this time the police had probable cause to arrest defendants. The car matched the description of the automobile used in the robberies; defendants and their clothing matched the descriptions of the robbers given to the police by the victims; and money and a white plastic bucket, taken in the robberies, were discovered in plain view in defendants' car.

SEARCH OF CAR
After defendant's arrests, the police searched defendants' car without first obtaining a search warrant.
In order for a warrantless search of a vehicle to be constitutional, two conditions must be met: (1) there must be probable cause to believe that the vehicle contains contraband or evidence of a crime, and (2) there must be exigent circumstances requiring an immediate search. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1971); State v. Guzman, 362 So.2d 744 (La.1978). "Exigent circumstances" have been defined as:
"[T]he impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants, if not arrested or by someone else. An immediate warrantless search is, therefore, constitutionally permissible when `the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.'"
Guzman, supra at 74.
In this case, the police knew that evidence was contained in the car because it had been seen through the window. The car could be moved, and the exigent circumstances requirement was met. The warrantless search was constitutional.

ARGUMENT NUMBER 2
(Assignment of Error Number 5)
Defendant Herman contends that the trial court erred in not suppressing the in-court identifications of him by his robbery victims. He claims that the in-court identifications were tained by earlier identification *1098 during the preliminary examination when defendant was wearing an orange prison jumpsuit.
A defendant attempting to suppress an identification must prove two things: (1) that the identification was "suggestive," and (2) that there was a likelihood of misidentification in the identification procedure. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Doucet, 380 So.2d 605 (La.1979). There are five factors which the court considers in determining whether the identification was suggestive: (1) the witness's opportunity to view defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness's certainty displayed at the time of identification; and (5) the length of time elapsed between the crime and the identification. State v. Guillot, 353 So.2d 1005 (La.1977).
Donald Franklin testified that he saw defendant for approximately one minute during the commission of the robbery, and that defendant had covered his face with his left hand. He stated that he was standing about two feet from defendant, the area was well-lighted, and he was able to get a good look at defendant. He identified defendant at the preliminary examination and testified at trial that he was fairly positive that defendant was the man who robbed him. Franklin also identified the clothing defendant wore on the night of the robbery and testified that he remembered the zipper on the shirt.
Rita Cornwell testified that she was able to observe defendant for about one minute on the night of the robbery. She stated that she had seen defendant during the preliminary examination, but did not remember what he was wearing. She testified that she immediately recognized defendant at trial.
Cornwell also testified that the store was well-lighted and that she was able to get a close look at defendant. She was positive of her identification of defendant. She also was able to identify the clothing defendant wore when the crime was committed.
Furthermore, on the night of the robbery, both Franklin and Cornwell were able to give the police a description of defendant's clothing and his approximate weight and height.
It is clear that no substantial likelihood existed of misidentification. This argument lacks merit.

ARGUMENT NUMBER 3
(Assignments of Error Number 7 and 8)
Defendant Herman argues that the trial court was in error in allowing the admission of a knife seized from his car, a photograph of the knife, and testimony about the weapon.
At trial, Officer Thompson testified that he observed a steak knife in defendant's car. The defense objected and moved for a mistrial on the ground that evidence about the knife was prejudicial and irrelevant. The trial court denied the motion stating that the knife was part of the res gestae.
It is clear that defendant was not prejudiced by the introduction of this evidence. Although its relevancy is questionable, the jury nevertheless returned a verdict of simple, not armed, robbery. The simple robbery verdict demonstrates that the jury did not believe defendant to have been armed with the knife at the time that the robberies were committed. The introduction of this evidence did not prejudice defendant. La.C.Cr.P. art. 921.

ARGUMENT NUMBER 4
(Assignments of Error Number 6, 11, 12, 14, 17 and 19)
Defendants argue that the trial court was in error in allowing the admission into evidence of ten exhibits introduced by the State.
The exhibits to which defendant directs his argument are items of evidence seized from defendants' car and photographs taken immediately after the robbery of the vehicle and its contents. Defendant urges that these items should not have been introduced *1099 into evidence because the State had not informed the defense of the items in response to discovery motions.
On May 23, 1980, the defense filed a Motion for Discovery in which it requested, among other information, any tangible evidence which the State intended to use at trial. The State answered, stating that it had $233.05 in currency, clothing, a white plastic bowl and coins and that these items were intended to be used as evidence at trial. At trial, however, the State introduced a number of other exhibits into evidence: a photocopy of the two-dollar bill; photographs of the first convenience store that was robbed; a knife, wallet and liquor bottle seized from defendants' car; photographs of the car and the seized items.
If the State fails to comply with a Motion for Discovery and the defendant is thereby prejudiced, then reversible error has been committed. E.g., State v. Davis, 399 So.2d 1168 (La.1981). In the case now before the court, however, defendants cannot claim that they were prejudiced by the State's failure to respond adequately to the defense discovery motion. A preliminary examination in this case was held on August 19, 1980, more than ten months before trial. During the preliminary examination, the same exhibits introduced at trial were introduced into evidence. The defense could not have been surprised by the evidence. Furthermore, on the date of the preliminary examination, defense counsel informed the trial court that it was satisfied with the State's answers to its discovery motion. For these reasons, defendants could not have been prejudiced by the introduction of the evidence in question.

ARGUMENT NUMBER 5
(Assignments of Error Number 9 and 18)
Defendant Herman argues that the trial court erred in admitting irrelevant hearsay testimony.
At trial, the State asked one of the arresting officers whether he knew if defendants were related. The defense objected on the ground that the question was irrelevant. The objection was overruled, and the witness answered the question by stating that defendants told him that they were brothers. The prosecutor later asked the officer the address of the defendants. The defense objected on the ground that the question required a hearsay answer. The trial court overruled the objection, and the witness testified that defendants had the same address and gave the address. The officer testified that this address was eight to ten miles away from the area where the robberies occurred.
Hearsay is an out-of-court statement introduced to prove the truth of its content. State v. Spell, 399 So.2d 551 (La.1981); State v. Weedon, 342 So.2d 642 (La.1977); State v. Sheppard, 371 So.2d 1135 (La.1979). Except for certain exceptions, hearsay is inadmissible. La.R.S. 15:434.
The first question to which the defense objected did not require a hearsay answer. The Assistant District Attorney simply asked whether the witness knew if defendants were related; it required a "yes" or "no" answer. The trial court was correct in its ruling that the question did not require a hearsay response.
The second question, however, did require a hearsay answer. No foundation had been established that would prove that the police officer had personal knowledge of defendants' address. See La.R.S. 15:463. The defense asserts that the answer given by the witness is prejudicial to defendant because defendant's reason for being in the area was that he was giving his brother a ride home. Although the question did require a hearsay answer, it nevertheless does not require a reversal. The information is not so highly prejudicial as to negate or even seriously bring into question defendant's explanation of his presence in the area. Furthermore, defendant and his mother were able to testify as to his address.
The defense also objected to both questions on the ground of relevancy. La. R.S. 15:441 provides:

*1100 "Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negate the commission of the offense and the intent. Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
Whether evidence is relevant is within the discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear abuse of this discretion. E.g., State v. Bates, 397 So.2d 1331 (La. 1981).
The relevancy of the first question concerning defendants' relationship is clear. The State had to establish some connexity between defendant Herman and defendant Chaney because Herman was the one to actually rob the convenience stores. Furthermore, Herman testified that Chaney was his brother.
The relevancy of defendants' addresses is not as clear as information about their relationships. Nevertheless, the information is not so prejudicial as to merit reversal. La.C.Cr.P. art. 921.

ARGUMENT NUMBER 6
(Assignments of Error Number 21, 22 and 23)
By these assignments of error, defendant Herman argues the trial court was in error in allowing the prosecutor to cross examine him as to a conviction which had been overturned on appeal.
On direct examination, the defendant Herman testified that he was convicted of simple burglary in 1967. He also stated that he was convicted of two other offenses, but this court later reversed those convictions. During cross examination, the Assistant District Attorney attempted to question defendant concerning the reversed convictions. The pertinent convictions are ones which occurred in Jefferson Parish in 1973 and which were reversed by this court in 1974. State v. Herman, 304 So.2d 322 (La. 1974). He was also convicted for a 1976 armed robbery in Jefferson Parish and was found guilty of simple robbery and sentenced to serve five years in jail. That conviction was reversed in State v. Herman, 358 So.2d 1282 (La.1978).
This court has held in State v. Jackson, 307 So.2d 604 (La.1975) that the prosecution may not only establish prior convictions of a witness, but may also cross examine that witness about the details of the prior convictions in order to show the true nature of the offenses. This rule has been extended also to defendants who take the stand in their own behalf. State v. Connor, 403 So.2d 678 (La.1981). This rule is not, however, without limits. This court has held that the extent into which this inquiry into past convictions can be permitted is dependent upon each individual case. The trial judge has great discretion in determining the type of inquiry which will be allowed and his discretion will not be disturbed on appeal absent a showing of abuse. State v. Brown, 371 So.2d 751 (La.1979).
Defendant's previous court history is rather convoluted. Defendant, himself, brought up this Court's reversals. Because defendant himself first mentioned the reversed convictions on direct examination and the scope of the prosecutor's questioning on cross examination was limited, defendant suffered no prejudice.
The questioning as to the other convictions which were not reversed by this court was also proper. The questioning did not go into the specific details about the commission of each offense, but rather attempted to place defendant's criminal history in perspective for the jury.
This assignment of error is without merit.

ARGUMENT NUMBER 7
(Assignment of Error Number 24)
Defendant Herman argues that the trial court committed reversible error when it refused to grant a mistrial.
During trial, the prosecutor made notes for his closing argument on the back of a copy of defendant Herman's "rap sheet". The defense requested a bench conference and called this to the trial judge's attention. The judge stapled a blank sheet of paper *1101 onto the prosecutor's notes to cover the rap sheet. After the jury retired, the trial judge allowed the defense to make an objection into the record. Defense counsel moved for mistrial based on the prejudicial effect the prosecutor's display of defendant's rap sheet had on the jury. The trial judge denied the motion for mistrial. The judge stated that it was impossible for the jury to read the rap sheet. He further reasoned that because defendant had failed to prove that the prosecutor had intended to prejudice defendant, the drastic remedy of mistrial was not warranted.
Based on the record before us, we conclude that the trial court correctly refused to grant defendant's motion for mistrial. The defense failed to prove that the jury was able to understand the rap sheet or that the Assistant District Attorney intentionally attempted to prejudice defendant. The judge did not abuse his discretion by refusing to grant defendant's motion for mistrial.

ARGUMENT NUMBER 8
(Assignment of Error Number 25)
Defendants argue that the trial court erred in permitting the jury to view the knife that was introduced into evidence.
During deliberation, the foreman of the jury requested that the jury be allowed to view the knife that was found in defendants' car. The defense objected on two grounds: (1) the State had not complied with the previously discussed Motion for Discovery, and (2) there was no evidence introduced connecting the knife with the commission of the crimes. The trial court overruled the objection and allowed the jury to view the knife.
Article 793 of the Louisiana Code of Criminal Procedure provides:
"A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict."
Because, as we decided above, introduction of the knife into evidence was not prejudicial, the trial court's decision to allow the jury to view the weapon was not in error.

ARGUMENT NUMBER 9
(Assignment of Error Number 4)
Defendant Chaney argues that his sentence is excessive and that the trial judge failed to give adequate reasons for the sentence that was imposed.
Defendant was sentenced to serve five years at hard labor for each of the two counts of robbery. The sentences are to run consecutively. The maximum sentence that can be imposed for a violation of La. R.S. 14:65 is seven years at hard labor.
At the sentencing hearing, the judge stated that defendants had criminal states of mind and had carefully picked the targets prior to committing the robberies. He emphasized the serious nature of the crimes. He noted some of defendant's extensive record. As a juvenile, defendant was arrested for purse snatching and released after a warning; less than a month later, he was arrested for simple burglary. Again, defendant was released with a warning. He was sentenced to the State Industrial School on the basis of two counts of simple burglary, but the commitment was suspended. Defendant had eight misdemeanor convictions as an adult. Based on defendant's adult and juvenile records, the trial court concluded that defendant had developed no respect for the rights of others.
The defendant argues that the trial judge did not give adequate reasons for the sentence, specifically because he did not take into consideration defendant's good employment record and his minimal involvement in the crimes charged.
It is not necessary for the trial court to articulate every factor to be taken *1102 into consideration as directed by La.C.Cr.Pr. art. 894.1. It is sufficient that the record reflect that the court adequately considered the guideline when sentencing that particular defendant. State v. Guiden, 399 So.2d 194 (La.1981). In this case, it is clear that the trial judge complied with Article 894.1, although he did not specifically mention all of the provisions contained in the article. Although he did not specifically mention defendant's employment record, the omission does not require reversal, especially in light of the information about defendant's employment contained in the Pre-Sentence Report reviewed by the judge and discussed below. Because the trial court adequately considered the guidelines contained in Article 894.1 in sentencing defendant, our review is limited to whether defendant's sentence is excessive. See State v. Cox, 369 So.2d 118 (La.1979).
Defendant is thirty years old. This is not his first felony offense. In addition to his eight misdemeanor arrests, defendant has several felony arrests including one for first degree murder (a no true bill was returned by the grand jury) and one for attempted murder (the charge was reduced to aggravated battery).
Defendant's education ended after he completed the ninth grade; he was seventeen. Defendant's employer considered defendant to be undependable. He had been fired for theft, but was rehired a year before the robberies were committed. Defendant is unmarried and has two children that he supports somewhat. He could not remember the name of the mother of his oldest child, but sent her money occasionally. He was planning to support his other son, but was arrested.
Defendant's extensive record indicates that he has little regard for the law. The circumstances clearly warrant the imposition of the sentence.

ARGUMENT NUMBER 10
(Assignment of Error Number 2)
By this assignment of error, defendant Herman contends that the evidence establishing his status as a multiple offender was insufficient. Specifically, he argues that court records introduced into evidence at the multiple offender were ambiguous, hearsay, and improperly authenticated.
After sentencing, the State filed a multiple offender bill against defendant alleging that he had been convicted in 1977 of simple robbery. The State introduced copies of records of the Nineteenth Judicial District Court, including a certified copy of the bill of information charging defendant with simple robbery and a certified copy of the minutes of court showing defendant's guilty plea to the charge. The defense objected to this evidence on the ground that the minute entry did not show an ultimate disposition of the case, but rather indicated only that the defendant had entered a guilty plea and had been properly Boykin ized. Defense counsel argued that the record was ambiguous as to the final disposition of the charges because the rap sheet, which also showed that the defendant had entered a guilty plea and was sentenced, and reflected a discharge date that was impossible unless an error had occurred or the conviction was reversed.
The trial court overruled this objection stating that apparently an error had been made in defendant's favor and explained that the time the defendant entered that 1977 plea in the Nineteenth Judicial District he was also serving a five year sentence imposed in 1976 on a conviction in the Twenty-Fourth Judicial District on the same charges. Defendant apparently was mistakenly released from the Department of Corrections because the conviction from the Twenty-Fourth Judicial District Court was overruled by this court. See State v. Herman, 358 So.2d 1282 (La.1978). Defense counsel agreed that the defendant was probably released for both convictions, but still maintained that the court records were ambiguous.
Sybil Guidry, the latent fingerprint examiner for the Louisiana State Police, was then called by the State. She testified that she is the custodian of criminal records received by the Department of Public Safety. She said that the criminal records contain *1103 the fingerprint card of an arrestee, his date of arrest, the reason for such arrest, the person's name, date of birth and the date of conviction. She then identified the criminal records of Herman which showed an arrest card out of East Baton Rouge for simple robbery in 1976 and an arrest card for armed robbery in 1980 (the present offense). She identified the fingerprints from the fingerprint cards as belonging to the same person. She then fingerprinted the defendant and testified that his were the same prints as appearing on the arrest card. On cross examination, she testified that she had a final disposition report on the simple robbery arrest conviction sentence in East Baton Rouge, but the disposition report did not contain the defendant's fingerprints. She did testify that all the other pertinent information contained in the 1976 arrest card and the 1977 final disposition report matched exactly, proving that the Herman arrested in 1976 was the same Herman convicted in 1977 and later charged, convicted and sentenced in the instant case. The State sought to admit this final disposition report, but the defendant objected on the ground that it was hearsay. The judge stated the document was admissible as a business record exception and held that the defendant was a second felony offender.
In order to prove a defendant is an habitual offender, the State need only establish by competent evidence that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. See, e.g. State v. Bernard, 366 So.2d 1294 (La.1978). Although it is questionable whether the final disposition report was available for introduction into evidence under the business document exception to the hearsay rule, the State nevertheless introduced sufficient evidence to prove defendant's status as a second offender. La.R.S. 15:529.1 does not require that the State prove that defendant was sentenced; only that he was convicted. See State v. Martin, 356 So.2d 1370 (La. 1978).
In State v. Barrow, 352 So.2d 635 (La. 1977), this Court found that the following information was sufficient to establish multiple offender status:
"[T]he court minutes reflecting a guilty plea on the true copy of the bill of information. His identification was proven by his fingerprints taken in open court and compared by an expert with those on the arrest record of the previous felony corresponding together with the bill of information forming the basis of the conviction."
Id. at 637.
The trial court, therefore, was correct in sentencing defendant as a multiple offender on the basis of the evidence of defendant's conviction and the fingerprint evidence connecting defendant with that felony and the instant offense.
This assignment of error is without merit.
For the foregoing reasons, the defendants' convictions and sentences are upheld.
AFFIRMED.
DIXON, C.J., and DENNIS, J., concur.
CALOGERO, J., concurs agreeing with the result but not the treatment of assignments of errors 1 & 10.
WATSON, J., concurs in the result.
NOTES
[*] Judges David R.M. Williams, Charles R. Ward and William H. Byrnes, III of the Court of Appeal, Fourth Circuit, participated in this opinion as Associate Justices Pro Tempore with Chief Justice Dixon and Associate Justices Calogero, Dennis and Watson.