PER CURIAM.
We grant the application for supervisory writs filed by the state to consider the correctness of a ruling by the trial court granting defendant’s Motion to Suppress the Evidence. The defendant was charged by bill of information on February 1,1993 with possession with intent to distribute cocaine, a violation of R.S. 40:967. On July 26, 1993, defendant filed a motion to suppress the evidence which was granted by the trial court the same day after hearing the testimony of Officer Leon Duncan. The state now complains of this ruling.

STATEMENT OF THE FACTS

On January 6, 1993, Officer Leon Duncan received information from a confidential informant who has “proven to be very reliable”. The C.I. told Officer Duncan that a black male, medium build about 46 years old, and approximately 5'8" or 5'9", named Charles (and he believed his last name was Lampton) was selling cocaine in front of 2646 North Miro Street. The C.I. said that prospective buyers would call Mr. Lampton on his beeper, and Mr. Lampton would instruct them to meet him in front of this residence where he would arrive in a brown Chevy station wagon and “conduct the business.”
Surveillance of 2645 North Miro began approximately 2:00 p.m. that afternoon. Later that afternoon, a man fitting the description furnished by the C.I., arrived in a brown station wagon. Mr. Lampton left the vehicle, walked across the street, and met another man. The other man handed Mr. Lampton currency, and in exchange, Mr. Lampton reached into his front pocket, “removed a clear white plastic bag containing a white substance”, and handed the object to the other man. Both men then left the scene. Surveillance of the defendant continued until 12:30 a.m. the following day when the officers left the defendant (apparently bedded down) at 1836 Philip Street.
At noon that day, Officer Duncan received another call from the confidential informant advising him that the defendant “was on route to that same location again to drop off a package.” Officer Duncan radioed several other officers asking for assistance in locating the defendant. The defendant’s vehicle was located on Jackson Street where several officers watched defendant park his vehicle in front of an autobody shop in the 1800 block of Jackson Street. The defendant entered the shop, but returned to his vehicle several minutes later. The officers saw the defendant check his beeper, and, as he was entering the vehicle, place his hand under the driver’s seat. The defendant went back inside the shop, returned, entered his car, and proceeded toward North Claiborne Avenue.
Officers followed the defendant as he was “driving extremely fast” on the 1-10. According to Officer Duncan, the defendant was *525 “continuously cheeking his rearview mirror” and drove through several red lights. Officer Duncan decided to stop the defendant because the officers believed that the defendant was aware of their presence. Sergeant Selby engaged his blue light and siren and the defendant pulled into the parking lot of a convenience store. Officer Duncan wasn’t sure whether the defendant was pulling over because of the officer’s siren and light or whether he was attempting to cut through the convenience store parking lot to avoid the red light at the intersection. The defendant was ordered from the vehicle, and as he was patted down by Officer Duncan at the rear of his vehicle, Sergeant Selby reached under the driver’s seat and removed two clear plastic bags containing white powder. Sixty-two dollars and a beeper were seized from the defendant’s person.
The trial court found that the police officers did not have probable cause to search the defendant’s automobile. The state argues that there was reasonable suspicion to make an investigatory stop of the vehicle, and the search under the driver’s seat is justified under the automobile emergency exception to the search warrant requirement.
The issue of whether police officers had reasonable suspicion to justify an investigatory stop of the defendant’s vehicle is not relevant to the issue presented by this writ application: Did the police officers have probable cause to believe that the defendant’s automobile contained contraband.
One exception to the warrant requirement is the “exigent circumstances/automobile” exception. See United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); State v. Tatum, 466 So.2d 29 (La. 1985); State v. LeCompte, 441 So.2d 249 (La.App. 4th Cir.1983), writ den. 446 So.2d 314 (1984). In Tatum, the Court held that police officers, who have probable cause to believe that a ear they have lawfully stopped contains contraband, may conduct as thorough a warrantless search as a magistrate could authorize. The Court reasoned:
For constitutional purposes, there is no difference between on the one hand, seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment and the Louisiana Constitution. Carrol v. U.S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); United States v. Ross, supra; State v. Chaney, 423 So.2d 1092 (La.1983).
Furthermore, prior Louisiana jurisprudence has held that a search warrant is not necessary where there is probable cause to search an automobile for contraband or evidence of a crime and there are exigent circumstances requiring an immediate search. State v. Chaney, supra; State v. Guzman, 362 So.2d 744 (La.1978).
Exigent circumstances has been defined as the impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants if not arrested, or by someone else. An immediate warrantless search is therefore constitutionally permissible when “the car is movable, the occupants are alerted, and the car’s contents may never be found again if a warrant must be obtained.” State v. Chaney, supra.
Tatum, 466 So.2d at 31-32.
In State v. Archie, 477 So.2d 864 (La.App. 4th Cir.1985), the police stopped a car which had a bent license plate. As the officers asked the driver and the passenger to get out of the ear, the passenger suddenly ducked down and placed something under the seat. The passenger and driver were taken out of the car, and one officer looked under the seat and found a loaded gun. On appeal of his conviction for being a felon in possession of a firearm, the defendant argued that the search under the seat exceeded the scope of the traffic stop. This court disagreed, citing Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), which extended a Terry search to encompass a protective search of an automobile from which a defendant was seized “recognizing that roadside encounters may be especially hazardous to police.” In discussing Long, this court noted:
*526 The [U.S. Supreme Court] held that a “search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the officer to believe that the suspect is dangerous and the suspect may gain immediate control of weapons.”
Archie, 477 So.2d at 865.
This court noted that the defendant had been stopped in a high-crime area and was seen trying to hide something under the seat. This court further stated: “[The officers] were not obliged to let him reenter the car without checking to see what he had placed under the seat considering the real possibility that they might be in danger.” Id. at 865-866.
In State v. Davis, 612 So.2d 256 (La.App. 4th Cir.1992), police officers observed a car speeding in the 3000 block of Martin Luther Blvd., and as the officers drew close, saw the defendant reach under the driver’s 'seat. The car pulled over and as one officer engaged the defendant in conversation, another officer reached under the driver’s seat and retrieved two plastic packets containing cocaine and another packet containing marijuana. The trial court found the initial stop of the defendant lawful, but found the search of the vehicle illegal and suppressed the contraband.
This court discussed at length the legality of the stop and the trial court’s conclusion that the “automobile exception” to the warrant requirement did not apply. The court stated “... it is unclear if the officers’ observations would rise to such a level to give them probable cause to believe that the defendant had placed a gun or contraband under the seat ...” Davis, 612 So.2d at 259. The court then held, based on Archie, that the search under the driver’s seat was proper and the trial court erred in granting the motion to suppress the evidence.
It appears that this court’s decisions in Archie and Davis control the present ease. Although Mr. Lampton was not traveling in a high crime area, police officers had other information which made his actions suspicious (i.e. the information from the confidential informant which was corroborated the previous day). One difference between Archie, Davis, and the present case is that in both Archie and Davis the defendant reached under the driver’s seat while being followed by police officers. In the present case, Mr. Lampton reached under the driver’s seat before entering the vehicle. However, considering the officers had information from a confidential informant that the defendant was selling drugs, and that he was on his way to a drug sale when he was stopped, the difference in the timing of when the defendant reached under the seat should not be a significant factor in determining whether the search was valid.
For the foregoing reasons, we reverse the judgment of the trial court granting the Motion to Suppress the evidence and remand this case for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.