**NOT DESIGNATED FOR PUBLICATION**

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**10-486**

**STATE OF LOUISIANA**

**VERSUS**

**FRED BALLARD**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT,
PARISH OF AVOYELLES, NO. 148586
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**J. DAVID PAINTER
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, J. David Painter, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Norris J. Greenhouse, Assistant District Attorney**
**Twelfth Judicial District**
**P.O. Box 444**
**Marksville, LA 71351**
**Counsel for Appellee:**
        **State of Louisiana**

**W. Jarred Franklin, Attorney at Law**
**Louisiana Appellate Project**
**3001 Old Minden Road**
**Bossier City, LA 71112**
**Counsel for Defendant-Appellant:**
        **Fred Ballard**

**PAINTER, Judge.**

Defendant, Fred Ballard, appeals his conviction the charge of distribution of cocaine, a violation of La.R.S. 40:967(A)(1). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant sold a white substance, later identified as cocaine, to an undercover narcotics agent for $40.00.

At trial, Jason Brouillette, an officer with the Marksville Police Department, testified that he served as a narcotics agent. Officer Brouillette recalled investigating an area in Marksville around Legion Drive. Officer Brouillette stated that he contacted the Alexandria Police Department to assist in the operation. Detective Ron Cruz was assigned to assist him. Officer Brouillette explained that the Marksville Police Department has a narcotic fund to provide money for undercover drug buys.

On October 28, 2008, Detective Cruz was targeting certain persons other than Defendant in the Legion Drive area. Detective Cruz was given an unmarked vehicle by the Marksville Police Department in which to conduct the buy. Officer Brouillette testified that he was following Detective Cruz in another vehicle. Detective Cruz testified that there was a confidential informant (CI) with him in the vehicle. The CI did not testify at trial.

Detective Cruz testified that, as he was driving down Legion Drive, Defendant was standing in front of a house. According to Detective Cruz, Defendant attempted to flag him down. Because the operation called for the detective to make contact with certain individuals, he did not stop where Defendant was standing and continued past the house to Officer Brouillette's location. Defendant was identified, and Detective Cruz was given permission to make contact with Defendant. Detective Cruz testified that when he went back to where Defendant was standing, Defendant "kept up by the driver's side door through a conversation I leaned over handed him $40.00 that was given to me by Detective Brouillette, and he handed me a white rocky substance. Through my training and experience I believed it to be crack cocaine." Officer Brouillette confirmed that he saw a black male walk up to the

vehicle. Following the exchange, Detective Cruz proceeded to Officer Brouillette's location and handed him the evidence bag. Additionally, at that location, Detective Cruz identified Defendant from a photograph. During the trial, Detective Cruz made an in-court identification of Defendant as the person who sold him the white rocky substance. Detective Cruz testified that the CI "played the role of identifying the person."

Officer Brouillette testified that when Detective Cruz gave him the white rocky substance, he put it in a Ziploc bag and sealed it. Officer Brouillette described it as a white rocky substance and recalled that there were two rocks. The evidence was turned over to the North Louisiana Criminalistic Laboratory (crime lab) in Alexandria, Louisiana.

During the testimony of Officer Brouillette, the lab report from the crime lab was introduced and filed into evidence without objection. When the State asked what substance was indicated on the report, Officer Brouillette responded that cocaine was identified.

On February 3, 2009, Defendant was charged with distribution of cocaine, a violation of La.R.S. 40:967(A)(1). A jury trial was held, and Defendant was found guilty as charged. Defendant filed a "Motion for Post-Verdict Judgment of Acquittal and Alternatively Motion for New Trial," which was denied on July 21, 2009.

The State filed a habitual offender bill charging Defendant as a fourth and subsequent offender. A habitual offender hearing was held, and the trial court found Defendant to be a fourth offender. On November 17, 2009, a sentencing hearing was held, and Defendant was sentenced to thirty years at hard labor without benefit of probation, parole, or suspension of sentence. Defendant filed a "Motion to Reconsider Sentence." A hearing was held on January 19, 2010, at which the trial court denied the motion.

Defendant then filed an appeal seeking review of his conviction. Review of Defendant's sentence is addressed in *State v. Ballard*, 10-487 (La.App. 3 Cir. ___/___/___), ___ So.3d ___.

Regarding this appeal, Defendant assigns two errors:

1. There is insufficient evidence to prove the guilt of Defendant beyond a reasonable doubt for the offense of Distribution of Schedule II; and

2. The ineffective assistance of counsel led to an unreliable verdict at trial. Specifically, the Defendant asserts his attorney was ineffective for failing to challenge the improper identification procedure via a motion to suppress or motion in limine.

For the following reasons, we find these assignments of error to be without merit, and we affirm Defendant's conviction.

## DISCUSSION

### *Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent regarding Defendant's conviction.

### *Sufficiency of Evidence and Alleged Tainted Identification*

Defendant challenges the sufficiency of the evidence on the ground that the State failed to negate the possibility of misidentification. In his second assignment of error, Defendant asserts that his attorney was ineffective for failing to suppress the tainted identification. Because these assignment of errors are interwoven, we consider them together. Additionally, Defendant challenges the sufficiency of the evidence on the basis that the State failed to introduce into evidence the cocaine that was allegedly sold.

In *State v. Hearold,* 603 So.2d 731, 734 (La.1992), the court explained in pertinent part:

> When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under *Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged

3

as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.

> On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).

The elements of distribution of cocaine are knowingly or intentionally distributing a controlled dangerous substance classified in schedule II, namely, cocaine. La.R.S. 40:967(A).

Defendant asserts in pertinent part:

> In the instant case, Detective Cruz did not know the Defendant nor had he seen him before. After the purchase, the CI told Cruz that the person who sold the cocaine was the Defendant. The CI was not produced at trial and the Defendant had no opportunity to cross-examine him relative to his identification. After the CI told Cruz who allegedly sold the cocaine, Detective Brouillette showed Cruz a single photo of the Defendant and Cruz identified him as the seller.

Defendant argues that the lineup lacked any other photos of men that resembled or appeared similar to Defendant such that it ensured that Detective Cruz would identify Defendant. Defendant asserts that the improper procedure used to prove the identity of the offender renders the jury verdict unreliable and violative of due process. Defendant points out that the State relied solely on the testimony of Detective Cruz and alleges that Officer Brouillette could not identify the seller and that the CI was not produced at trial. Defendant asserts that his attorney was ineffective for failing to file a motion to suppress or motion in limine challenging the tainted identification. Defendant contends that had counsel filed these motions, "the identification would not have been heard by the jury."

Additionally, Defendant asserts that he lived at the residence on Legion Drive with three of his brothers who were of similar height, weight, and appearance.

4

In *State v. Bright,* 98-398 (La. 4/11/00), 776 So.2d 1134, the defendant challenged his identification as the perpetrator and argued the identification should have been suppressed. The supreme court addressed the issues together. First, the court addressed whether the district court erred in denying the defendant's motion to suppress the identification noting, in pertinent part:

> An identification procedure is suggestive if it unduly focuses a witness's attention on the suspect. *State v. Neslo*, 433 So.2d 73, 78 (La.1983); *State v. Robinson*, 386 So.2d 1374, 1377 (La.1980). Strict identity of physical characteristics among the persons depicted in a photographic array is not required; however, there must be sufficient resemblance to reasonably test the identification. *State v. Smith*, 430 So.2d 31, 43 (La.1983); *State v. Guillot*, 353 So.2d 1005, 1008 (La.1977). The question for a reviewing court is to determine whether the procedure is so conducive to irreparable misidentification that due process was denied. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977); *State v. Martin*, 595 So.2d 592, 595 (La.1992); *State v. Prudholm*, 446 So.2d 729, 738 (La.1984). A defendant attempting to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. *State v. Prudholm*, 446 So.2d at 738; *State v. Chaney*, 423 So.2d 1092, 1098 (La.1982).

*Id.* at 1145.

The *Bright* court held that "the totality of the circumstances does not present a substantial likelihood of irreparable misidentification under the factors set out in *Manson v. Brathwaite*, [432 U.S. 98, 97 S.Ct. 2243 (1977)] *supra.*" *Bright,* 776 at 1145. In footnote number six, the court explained:

> If a suggestive identification procedure has been proved, the reviewing court must look to several factors to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification at trial. *State v. Martin*, 595 So.2d at 595. These factors, set out in *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), and approved in *Manson v. Brathwaite, supra*, include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the time of the identification; and (5) the time between the crime and the confrontation. *Martin*, 595 So.2d at 595. The corrupting effect of the suggestive identification itself must be weighed against these factors. *Id.*

*Id.* at 1145.

Next, the *Bright* court addressed whether the State presented sufficient evidence to prove identity, noting, in pertinent part:

> When a key issue at trial is whether the defendant was the perpetrator of the crime, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable doubt. *State v. Smith*, 430 So.2d at 45; see also *State v. Brady*, 414 So.2d 364, 365 (La.1982); *State v. Long*, 408 So.2d 1221, 1227 (La.1982). The fact-finder weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983). However, we are mindful that the touchstone of *Jackson v. Virginia* is rationality and that "irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall*, 523 So.2d at 1310.

*Id.* at 1147.

In the present case, Defendant asserts that his attorney should have filed a motion to suppress or motion in limine to exclude the tainted identification procedure. In *State v. Boyance,* 05-1068, p. 5 (La.App. 3 Cir. 3/1/06), 924 So.2d 437, 440, *writ denied*, 06-1285 (La. 11/22/06), 942 So.2d 553, this court explained in pertinent part:

> A defendant who does not file a motion to suppress an identification, and who fails to contemporaneously object to the admission of the identification testimony at trial, fails to preserve the issue of its admissibility as an error on appeal.' *State v. Johnson*, 95-711, pp. 3-4 (La.App. 3 Cir. 12/6/95), 664 So.2d 766, 769, *writ denied*, 96-82 (La. 3/29/96), 670 So.2d 1236. *See also* La.Code Crim.P. arts. 703(F) and 841(A).

However, because Defendant asserts that his attorney was ineffective for failing to do so, this claim is properly before this court for review. *Johnson*, 664 So.2d 766.

In order to prove that his counsel was ineffective for failing to seek exclusion of this evidence, Defendant must show that his counsel was deficient and that he suffered prejudice as a result of the deficiency. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

Defendant asserts that use of the single photo was an improper and suggestive identification procedure. In *State v. Alexander,* 05-276, 05-277 (La.App. 3 Cir. 11/2/05), 916 So.2d 303, the defendant challenged the sufficiency of the evidence, specifically, the use of a single photo for identification. This court explained:

> Although single photo identifications are generally viewed by the courts with suspicion, their suggestive nature will not *per se* preclude admissibility unless found to be untrustworthy under the total circumstances. *State v. Harper*, 93-2682 (La.11/30/94), 646 So.2d 338.

In *State v. Harris*, 28,517 (La.App. 2 Cir. 8/21/96), 679 So.2d 549, *writ denied*, 96-2954 (La.9/26/97), 701 So.2d 975, the identifying officers clearly saw the Defendant at night when he leaned into their car with illumination provided by streetlights, and the photo identification took place an hour after the drug sale. In *State v. Anderson*, 30,306 (La.App. 2 Cir. 1/21/98), 706 So.2d 598, the Defendant alleged he was not the person who committed the offense. An undercover police officer was shown a single photograph and identified the Defendant as the person who sold the drugs to him. The officer testified that although the transaction occurred at night, a nearby street light provided illumination into his car, which was parked approximately fifteen feet from the light. The Defendant leaned into his car through the passenger side window to effect the transaction, so the officer had a clear view of the Defendant's face. The Defendant was in the officer's presence for eight to ten minutes and he paid attention to the Defendant knowing he may have to identify the Defendant in court. Additionally, the officer identified the Defendant about ten minutes after the transaction. The court citing *Harris*, found the photographic identification trustworthy and admissible.

*Id.* at 306.

Although Defendant argues that Detective Cruz identified him from a single photo, during trial neither the State nor Defendant explained how many photos were shown to Detective Cruz. Officer Brouillette testified that after Detective Cruz gave him the narcotics, he showed him "a picture of Mr. Ballard in which he did i.d. Mr. Ballard. . . ." Additionally, the following pertinent exchange occurred during the testimony of Detective Cruz:

Q. I simply want to know what role the informant played in this transaction?

A. The informant played the role of identifying the person. I'm not from here.

Q. So you . . . knew Mr. Ballard's identity from that person then not from Detective Brouillette?

A. No. The identity of Mr. Ballard was positively identified by me by Detective Brouillette who once he knew who the person . . . that I made the transaction from. He showed me pictures. Once everything was done. On that day, he showed me pictures.

   . . . .

Q. So you were only able to identify Mr. Ballard from the picture right?

A. From the picture and from me making the transaction with him.

Even assuming only one photo was shown to Detective Cruz, this court finds that, applying the *Biggers* factors, Defendant failed to prove that the photo identification was untrustworthy under the total circumstances. Detective Cruz had adequate opportunity to observe Defendant when he came to the passenger window. Only a short time elapsed between the drug purchase and Detective Cruz's identification of Defendant from the photograph.

Furthermore, this court finds that the State presented sufficient evidence to negate any reasonable probability of misidentification. In court, Detective Cruz identified Defendant as the person who sold him the drugs. Defendant's attorney asked Detective Cruz: "Would it surprise you to know that at the address 549 Legion Drive Mr. Ballard has three brothers who are similar in height, weight, and build?" Detective Cruz responded: "I know I made a transaction with him. The picture was shown to me and that's who I identified." On re-direct examination by the State, Detective Cruz explained that Defendant was the only one standing in front of the Legion Drive residence when Defendant flagged him down. The jury heard and apparently rejected Defendant's hypothesis of innocence that he could have been mistaken for one of his brothers as the person selling the drugs. "It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review." *Alexander*, 916 So.2d at 306.

*Failure to Introduce the Cocaine into Evidence*

Defendant asserts that the State failed to prove the connection between the lab report and the cocaine. Defendant explains that neither the actual cocaine nor pictures of the cocaine were produced at trial. Defendant offers no cases in support of his claim.

In *State v. Trosclair,* 96-1171 (La.App. 1 Cir. 2/14/97), 691 So.2d 202, *writ denied*, 97-1187 (La. 10/17/97), 701 So.2d 1333, the defendant, convicted of distribution of marijuana, argued on appeal that the State never introduced the

marijuana into evidence. The court found that the scientific analysis report which was introduced, without objection, to prove that the substance seized was marijuana and the agent's testimony that he purchased a plastic bag containing what he believed to be marijuana were sufficient to support a conviction without the marijuana being produced or introduced into evidence.

Detective Cruz testified at trial that: "Through my training and experience, I believed it [the white substance] to be crack cocaine." Officer Brouillette testified that the two rocks of white substance given to him by Detective Cruz were placed in a Ziploc bag and sealed immediately following the buy from Defendant. Officer Brouillette took the evidence to the crime lab in Alexandria, Louisiana on October 30, 2008. During the testimony of Officer Brouillette, the State introduced and filed into evidence a copy of the analysis report from the crime lab, without objection.[1] Officer Brouillette testified, without objection, that the report indicated the substance was tested on December 2, 2008, and that the substance was cocaine.

Accordingly, this court finds that sufficient evidence was presented by the State to support the conviction. This claim lacks merit.

---

[1]Louisiana Revised Statutes 15:500 provides:

In all criminal cases and in all cases in juvenile or family courts which are of a criminal nature, and in civil forfeiture proceedings arising from criminal activity, the courts of this state shall receive as evidence any certificate made in accordance with R.S. 15:499 subject to the conditions contained in this Section and R.S. 15:501. The certificate shall be received in evidence as prima facie proof of the facts shown thereon, and as prima facie proof of proper custody of the physical evidence listed thereon from time of delivery of said evidence to the facility until its removal therefrom.

Louisiana Revised Statutes 15:501 provides:

A. The party seeking to introduce a certificate made in accordance with R.S. 15:499 shall, not less than ten days prior to the commencement of the trial, give written notice of intent to offer proof by certificate. Such notice shall include a copy of the certificate.

B. (1) The party against whom such certificate is offered shall be permitted to subpoena on cross-examination, the person who performed the examination or analysis of the evidence. If the subpoena is requested at least five days prior to the commencement of trial or the person subpoenaed responds to the subpoena, the certificate shall not be prima facie proof of its contents or of proper custody.

(2) When the attorney for the defendant, or the defendant acting in his own defense, requests that a subpoena issue to the person who performed the examination or analysis, the request shall be in writing and shall contain a certification that the attorney or the defendant intends in good faith to conduct the cross-examination.

## DECREE

For all of the foregoing reasons, Defendant's conviction is affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2-16.3.